# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v. )<br><br>DE'VONNE MCDONDALD-JONES, )<br><br>Defendant. ) | Crim. No.  23cr10186-ADB |

### SENTENCING MEMORANDUM

Defendant De'vonne McDonald-Jones was a violent and leading member of the Heath Street Gang.  As noted in the PSR, Defendant was involved in a myriad of gang-related crimes including violent crimes, drug trafficking, and financial crimes.  Defendant also played a role in the recruiting and grooming of young Heath Street Gang members and associates and thereby committed these juveniles to a future of gang violence and crime.  Defendant's gang-related criminal activities put the community at risk through violence on the street and degraded the living conditions of his neighborhood - the Mildred C. Hailey Apartment – by raising the specter of ongoing gang violence (not only from the Heath Street Gang but also its rivals targeting the area of the Mildred C. Hailey Apartments for retaliatory violence) and by the theft of the community's children through gang recruitment into one of the most violent criminal organizations in Boston.  Defendant's violent activities also impacted various other areas of Boston through constant gang warfare (including murders and shootings) which claimed not only rival gang members but also innocent victims.

Given all of the circumstances of this case (especially the attempted murder in which Defendant was involved), the Government recommends a sentence of 135 months' incarceration

1

to be followed by 3 years of supervised release, no fine and a $100 mandatory special assessment. As one of the terms of his supervised release, the Government requests that Defendant be barred from entering or staying at the Mildred C. Hailey Apartments. The Government's recommended sentence aligns with the factors set forth in 18 U.S.C. § 3553. In particular, the sentence is necessary to protect the public and to deter both Defendant and others from similar criminal conduct in the future.

## THE SENTENCING GUIDELINES

"'Relevant conduct in a RICO case' for purposes of § 1B1.3 of the Guidelines 'includes all conduct reasonably foreseeable to the particular defendant in furtherance of the RICO enterprise to which he belongs.'" *United States v. Sandoval*, 6 F.4th 63, 105 (1st Cir. 2021) (citations omitted). "The District Court must find such relevant conduct by a preponderance of the evidence." *Id*. "Any such conduct becomes a 'cross reference' that may be used to set the offense level." *Id*. The Government believes that Defendant's applicable Sentencing Guidelines are based primarily on the conspiracy to commit murder which resulted in a shooting in the area controlled by the H-Block street gang on April 23, 2002. *See* PSR at ¶¶ 42-45. Defendant is subject to an adjusted offense level 33. Defendant is a CHC IV. *See* PSR at ¶ 141. After acceptance, Defendant's incarceration range is 135-168 months pursuant the PSR's calculations. *Id*.

## DEFENDANT'S CRIMINAL CONDUCT

### A. Defendant was an Active and Leading Member of the Heath Street Gang

The Heath Street Gang originated in what is now the Mildred C. Hailey Apartments, a housing development in the Jamaica Plain section of Boston. The gang's criminal activities have

had a particularly negative impact on the members of the public living (including families) living in housing development through the gang's violence (including violent/threatening conduct on site at the development as well as retaliatory attacks/shootings from rival street gangs targeting the housing development), drug dealing (in the housing development and in the nearby area), and the active recruitment of children from the housing development into the gang. The Heath Street Gang's activities have also severely impacted other areas of Boston, as well as surrounding communities. As a prime example, the Heath Street Gang has been involved in a long-standing conflict with the Mission Hill Gang which has resulted in Heath Street Gang members/associates committed numerous murders/shootings in the Mission Hill area, including public housing developments. Similarly, the Heath Street Gang has also had an ongoing bloody conflict the H-Block Gang which has resulted in numerous shootings not only at the Mildred C. Hailey Apartments, but also in the section of Roxbury where the H-Block Gang operates – these shootings include the one supported by Defendant in April 2020 as discussed below.

As set forth in the PSR, Defendant was involved in a myriad of criminal activities associated with his membership in the Heath Street Gang, including violent crimes, drug dealing, and financial crime. In addition to his own violent crimes, Defendant was a leading member of the Heath Street Gang and thus involved in the recruiting of primarily young men and boys into the gang as well as the grooming of these new recruits into the criminal lifestyle of a Heath Street Gang member. *See, e.g.,* PSR at ¶ 9. One example of Defendant overseeing the crimes of younger members/associates can be seen in the actions surrounding the bank robbery by a juvenile Heath Street Gang member/associate which took place in June 2018. *See* PSR at ¶¶ 38-41. The individual robbed a bank in the Hyde Park section of Boston with a note. Around the

3

time of the bank robbery, police officers had contact with Defendant and another leading member of the gang. The two gang leaders were in the bleachers of a playing field which gave them a vantage point of robbery consistent with the two being able to oversee the robbery. The robber was subsequently arrested after he was found by police in a vehicle associated with Defendant. This event is consistent with Defendant's role in grooming and supporting younger members/associates of the gang.

### B. Defendant Committed Multiple Acts of Violence as a Member of the Gang

In a recorded jail call, Defendant admitted to being actively involved in the Heath Street Gang's violence targeting rival street gangs in Boston for an extended period of time. During a recorded jail call on January 27, 2020, with Trevon Bell (another leading member of the gang), Defendant responded to a gang member Keyon Roberson who claimed that Defendant's older clique in the gang was not sufficiently violent in comparison to the younger members/associates:

> What?! And you n***as say we ain't on what?! N***a you must not know n***a. You better go … you better date all the way back … n***a till when we was still beefin with the A ["A" is a reference to the Academy Homes Gang with whom the Heath Street Gang had a highly violent conflict including several shootings] when n***as was tellin us to chill n***a. In 2011! You better take it back to them days n***a! Almost ten years ago n***a! You n***as ain't on [the] shit we was on. On dead dogs they're not.

On or about March 4, 2012, Defendant (at the age of 17) committed a gang-related shooting. *See* Exhibit 1. This shooting took place in the Mission Hill area of Boston and in the territory of the Mission Hill Gang – one of the primary rivals of the Heath Street Gang. Per witness accounts, Defendant chased several other youths before firing three times at two young males and a female who were fleeing from him. One innocent bystander, who witnessed this part of the shooting, informed officers that one of the rounds fired by Defendant had impacted in front of witness's feet – thus demonstrating the danger to the innocent members of the

4

community posed by Defendant's and the gang's violence.  Defendant then smiled at the witness

and fled the area.  Defendant was subsequently arrested with a loaded 9mm handgun that had an

obliterated serial number and 8 more rounds in it.

### C.  Defendant Was Involved in an Attempted Gang-Related Murder Targeting the H-Block Gang in 2015

On or about October 6, 2015, at 10:41 p.m., Boston Police Department Youth Violent

Strike Force officers were targeting patrols in H-Block Gang area due to an increase in gang

violence.  *See* Exhibit 2.  As noted above, one of the primary rivals of the Heath Street Gang is

the H-Block Gang and the two violent organizations have been engaged in an ongoing bloody

conflict involving numerous retaliatory shootings and murders.  While traveling near Harold

Street (which is in H-Block Gang territory), YVSF officers (in an undercover capacity) observed

a vehicle driving at a high speed behind them.  The vehicle passed them at a high speed.  The

officers attempted to conduct a traffic stop, including using their lights and sirens, but the vehicle

fled.  After a pursuit, officers were able stop the vehicle which had three males in it.  The males

were identified as known Heath Street Gang members.  Defendant was the front seat passenger.

Officers further observed that driver's window and both the passenger window and the rear

passenger window were rolled down consistent with possible disposing of contraband or

evidence during the vehicle chase.

Officers retraced the chase and found a firearm discarded at a nearby golf course –

consistent with being discarded from the passenger side.  The firearm was a Target Bulldog 357

Magnum revolver loaded with 6 rounds of .38 caliber special ammunition.  Officers also found a

firearm just prior to where the traffic stop finally occurred.  The firearm was a Smith & Wessen

.38 Special Model 10-7 revolver loaded with .38 caliber special ammunition.

### D. __April 23, 2020 - Conspiracy to Commit Murder Targeting H-Block Gang__

In 2020, Defendant was again involved in a violent criminal act targeting the rival H-Block Gang by conspiring to commit murder. See Exhibit 3. The H-Block Gang's territory includes the Humbolt Avenue area of Roxbury. This conspiracy result in the exchange of gun fire on Boston public streets and one of Defendant's cohorts being shot in the leg. There is no dispute Defendant drove the wounded man (Anthony Jackson) and a Heath Street Gang member (Tyrre Herring) to Brigham and Women's Hospital where they arrived at approximately 3:01 a.m. Defendant was driving a black 2017 Honda Accord registered under his name.

As to the shooting/murder conspiracy,

1. At approximately 2:43 a.m., investigators recovered video of a dark-colored vehicle which investigators believe is consistent with the 2017 Accord registered to Defendant turning on Townsend Street from Harold Street (this area is within the H-Block Gang's territory). Defendant contends that the taillights of the vehicle are inconsistent in the video coverage before the shooting compared with the video coverage after the shooting, thus indicating two different vehicles. Defendant also argues that neither vehicle belonged to him. The government would note that the vehicles are similar in appearance and that the quality of the video is not of the highest and could result in inconsistent images of the taillights at night. However, there is no dispute that a dark colored sedan dropped off the two men in H-Block Gang territory in the early morning hours.

2. The two men were subsequently identified by their clothes and other evidence as (1) Tyrre Herring – a Heath Street Gang member and co-defendant in this RICO case, and (2) Anthony Jackson.

3. Approximately one minute later, at 2:44 a.m., Herring and Jackson were captured on video walking from Townsend Street onto Harold Street.

4. At approximately 2:46 a.m., Herring and Jackson were video recorded at the intersection Harold and Harrishof Street walking towards central H-Block Gang territory over the next minutes.

5. At approximately 2:48 a.m., Herring and Jackson were recorded walking towards the area of 58-60 Holworthy Street.

6. Approximately two minutes later, at 2:50 a.m., a grey SUV was recorded approaching 60 Holworthy Street – consistent with a potential response by members of the H-Block Gang to Herring and Jackson walking in H-Block territory.

7. Approximately 33 seconds later, there are three successive ShotSpotter alerts in the area indicating multiple shots (potentially 10 shots) being fired in the area of Holworthy Street. The alerts occurred at 2:50:33 a.m. (1 round detected), 2:50:38 a.m. (2 rounds detected) and 2:50:47 a.m. (7 rounds detected).

8. Ballistic evidence was subsequently recovered on Holworthy Street and consistent with multiple shots being fired as per the ShotSpotter alerts.

9. As to the firing of these shots, at approximately 2:50:47 a.m., video captured Herring (identified by his clothing) emerge from an alley and walk down the driveway of 60 Holworthy Street before shooting from the driveway at the SUV which had past 60 Holworthy Street.

10. It was subsequently identified that Jackson lost one of his sneakers at 60 Holworthy Street, which was recovered by investigators.

11. At approximately 2:51:23 a.m., Herring and Jackson were recorded running from the area at the intersection Harold Street and Harrishof Street - retracing their entry to the area - with Jackson appearing to have some problems running (consistent with him limping).

12. At approximately 2:51:42 a.m., McDonald-Jones' vehicle was captured on video at the intersection of Harold Street and Harrishof Street leaving the area at high speed.

13. At approximately 3:01 a.m., McDonald-Jones' vehicle was identified at Brigham's and Women's Hospital where Jackson subsequently received emergency treatment for a bullet wound in his thigh. Officers identified that there was blood in the back passenger seat of the vehicle – consistent with Jackson's leg wound.

14. Brigham and Women's Hospital is approximately 2.4 miles from the intersection of Harold Street and Harrishof Street and would take approximately 11 minutes to reach by motor vehicle at that time of night per Google. *See* Exhibit 4.

These facts clearly support that Defendant conspired with Herring and Jackson to commit murder against members of the H-Block Gang, and Defendant's role in the conspiracy was the getaway driver.

Defendant's argues that he did not pick-up the two assailants immediately after the shooting and drive them to the hospital, and thus did not know about the shooting. This claim is baseless given the facts of the case, especially the timeline. Defendant admits that he was the driver of the vehicle that brought Jackson to the hospital. Defendant arrived with the wounded man at the hospital at approximately 3:01 a.m. As noted above the hospital was approximately 2.4 miles away from the shooting and it would take approximately 11 minutes to reach the hospital from the area of the shooting. The shooting took place through approximately 2:50:47 a.m. as discussed above. The vehicle fleeing the area with the two shooters was recorded at approximately 2:51:42 a.m. Thus, the vehicle would have had to have driven directly to the hospital from the scene of the shooting to arrive approximately 10-11 minutes after the shooting.

Defendant raises the scenario (without committing to it) that (1) the two shooters could have been driven to the Mildred C. Hailey housing development in a another vehicle, (2) Defendant happened to be located in one of the housing development's multiple parking lots at close to 3 a.m. in the morning with his car, (3) the two shooters, by chance, were driven to that very same parking lot, (4) Defendant saw that one of the individuals was shot and need to go to the hospital, and (5) so the wounded man was transferred from one car to Defendant's car and Defendant drove the wounded man to the hospital. This fantasy scenario could have taken place in the 10-11-minute time span from the shooting to the arrival of Defendant's vehicle at the hospital at approximately 3:01 a.m.

Defendant also ignores a second glaring issue with his claims – Tyrre Herring. In his argument, Defendant admits that he drove Jackson (the wounded man) to the hospital but patently ignores that he also drove Herring to the hospital. Tyree Herring had just committed an

attempted shooting murder with Jackson on a public street. Clearly, the police would be immediately responding, including checking hospitals. Tyrre Herring would clearly not want to be connected to the wounded Jackson if he could avoid it. If Defendant was going to pick-up the bleeding Jackson and take Jackson to the hospital, there would be no reason for Herring to go along with them and connect himself to Jackson (especially while wearing the same clothes he wore in the shooting). Thus, the fact that Herring was in the car with Defendant and Jackson further cements that Defendant drove the two shooters from the shooting directly to the hospital because of Jackson's bullet wound.

Finally, the timing of the shooting is completely consistent with a planned gang shooting. As noted in the PSR at Paragraph 46, in July 2020, just months after the H-Block shooting, Defendant and another Heath Street Gang member discussed the planning of a gang shooting targeting the Mission Hill Gang which include plans as to not only the commission of the actual shooting but also the get-away. This shooting was planned in detail just like the one discussed by Defendant in July. In this regard, (1) the shooters were dropped into rival territory to commit the murder, (2) within seven minutes of being dropped off, the shooters had walked further into rival territory committed the attempted murder, and (3) ***within one minute***, the shooters had run from the site of the shooting and been picked up by Defendant. Defendant as the driver knew what was going to happen and was prepared to act immediately to do his part in the murder conspiracy – act as the getaway driver. Defendant conspired to commit a gang-related murder and should be held accountable for this act as recommended by Probation in the PSR.

## **CONCLUSION**

The Government's proposed sentence of 135 months' incarceration to be followed by 3 years of supervised release is an appropriate sentence for all the reasons set forth in 18 U.S.C. 3553.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney States

Date: November 28, 2025

By: */s/ Michael Crowley*
MICHAEL CROWLEY
Assistant U.S. Attorney

## **CERTIFICATE OF SERVICE**

I, Michael Crowley, Assistant United States Attorney, do hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

*/s/ Michael J. Crowley*
MICHAEL J. CROWLEY
Assistant U.S. Attorney

10